CHARLES E. HOLT, RESPONDENT, v. LOUISE BARTLETT, APPELLANT.*

Kansas City Court of Appeals.   January 23, 1928.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 1031, n. 31; Damages, 17CJ, p. 1091, n. 85; Motor Vehicles, 42CJ, p. 953, n. 30; p. 956, n. 80; p. 1141, n. 97; p. 1263, n. 48; Trial, 38Cyc, p. 1711, n. 19.

*Miles Elliott* and *Duvall & Boyd* for respondent.

*Culver, Phillip & Voorhees* for appellant.

FRANK, C.—Suit to recover for alleged personal injuries caused by a collision between defendant's automobile and a motorcycle which plaintiff was riding at the time of the collision. Plaintiff recovered judgment in the sum of $1500. Defendant appealed.

The collision occurred on Sixth street in the city of St. Joseph on July 30, 1924. Sixth street runs north and south and two car tracks are laid in the center thereof. The substance of plaintiff's petition is that plaintiff was riding a motorcycle south along the west of the center of Sixth street, and that defendant was driving an automobile northward on said street and negligently drove said automobile west of the center of said street and caused and permitted it to collide with the motorcycle which plaintiff was riding, thereby causing serious and painful injuries to plaintiff.

The answer pleads (1) a general denial, and (2) contributory negligence in that plaintiff's injuries, if any, resulted from the negligence of plaintiff in driving the motorcycle at a dangerous and excessive rate of speed and in driving it east of the center of said street to and against the side of defendant's automobile.

Plaintiff testified that as he rode off the south end of the viaduct on Sixth street he observed a Ford car seventy-five or eighty feet ahead of him and traveling south on said street at fifteen or twenty miles per hour; that he overtook the Ford car and turned out to pass it on the east side and then observed defendant in her car, driving north on said street; that she was about one hundred to one hundred and fifty feet south of him when he first saw her; that after he turned out to pass the Ford car and saw defendant, his motorcycle traveled sixty or seventy feet before the collision, and defendant's car traveled about the same distance in that time; that the collision occurred about one hundred and fifty feet south of the south end of the viaduct which plaintiff had ridden over as he proceeded southward; that when the collision occurred the rear wheel of the motorcycle was about even with the front wheels of the Ford car; that as defendant drove northward the left wheels of her car were on the west side of the west rail of the east car track, and as she came near him her car turned northwest toward him and he turned to the southwest to avoid a collision but her car struck the rear wheel of his motorcycle and knocked him down; that he made no special effort to increase his speed and pass the car because he thought defendant had plenty of clearance on the other side; that he had four and one-half feet between him and the Ford car in which he could have swerved and

gotten out of the way; that he could have stepped on the gas and passed the Ford car and then had the entire west side of the street; that he ran along about four and one-half feet from the Ford car the entire distance of sixty or seventy feet; that he could have swerved over two feet to the right; that there would have been no collision if defendant had gone straight ahead instead of turning to the northwest; that he pulled around as much as he could to keep from getting in the path of the Ford car going south.

Milton Davis, called as a witness by plaintiff, testified that at and prior to the collision, he was driving a truck north on Sixth street; that defendant driving an automobile in the same direction passed him at a point about three hundred feet south of the place where the collision occurred; that she drove about the center or a little to the left of the center of the street until after the collision; that as plaintiff was attempting to pass the Ford car, he was trying to clear himself, holding as close to the Ford car as he could; that the street was rough and he could hardly drive on it; that between the west rail of the west car track and the west side of the street, there was space for two automobiles to stand abreast; that defendant was traveling pretty near the only place she could travel on account of the streets on the east and west side being torn up; that it was so rough that it was a bad place to drive an automobile, "going and coming;" that the Ford was traveling along the extreme west edge of the pavement about eighteen inches from the fence—that was the only driveway you had—either that or up in the center of the track; that the motorcycle was between the rails of the west track when the collision occurred.

Defendant testified that at the time in question she was driving north on Sixth street, straddling the east rail of the east car track along the curve leading onto the Sixth street viaduct; that she was driving eighteen or twenty miles per hour; that plaintiff was coming south on a motorcycle; that he looked like he was heading right at her; that she stopped her car as quickly as she could and he swerved over to the west; that as he swerved to the west, the Ford car either grazed him or the momentum of the motorcycle threw the motorcycle back to the east track; that at the time the motorcycle struck the west side of her car, the left rear wheel of the automobile was across the east rail; that the motorcycle made a mark on the running board of the automobile; that she stopped her car within five or six feet, and when stopped, the car was straddling the east rail of the east track; that she had to move her car in order to let a northbound street car on the east track pass; that her automobile was not on the west side of Sixth street immediately before or at the time of the collision and that she did not pull over to the west side and run into the motorcycle. Defendant further testified:

"Q. Did you have time to get out of the road or do anything to prevent the motorcycle from striking the side of your car? A. I couldn't have gone any further over. If I had gone much further, I would have gone over the embankment."

W. J. Fleeman testified that he was at the scene of the accident shortly after it occurred and that defendant's car was on the east side of the street headed north and straddling the east rail of the east track; that it had to be moved in order to let a northbound street car pass on the east track.

Police officers testified that on July 30, 1924, plaintiff was at the police station and reported that while riding south on Sixth street on a motorcycle, the gasoline wire became caught and he could not release it; that he was trying to release it and the machine got out of his control and threw him, and while on the ground, a man driving south in a car ran over him.

Defendant denied the testimony given by the police officers and testified that he reported to them at the Police station that a woman had run over him.

Appellant's first contention is that the court erred in refusing instruction "C" requested by her. This instruction is as follows:

"The court instructs the jury that if you believe from the evidence that the plaintiff, Charles E. Holt, was operating his motorcycle at the time and place mentioned in evidence at an excessive and negligent rate of speed, and that said excessive and negligent rate of speed at which said motorcycle was traveling (if you believe it was so traveling) caused or contributed to cause the collision mentioned in evidence, then the plaintiff is not entitled to recover any damages in this case, no matter where said collision occurred and no matter whether said collision occurred east or west of the center line of Sixth street."

The answer pleads that whatever injuries, if any, plaintiff received, were due to and caused by the carelessness and negligence of plaintiff in operating the motorcycle which he was riding at a dangerous and excessive rate of speed.

If there was evidence tending to support this issue, it should have been submitted to the jury. In determining this question, we must consider the evidence in a light most favorable to defendant, giving to her the benefit of every reasonable inference fairly deducible therefrom. Thus viewing the evidence we glean from the record the following facts.

While plaintiff was at the south end of the viaduct he observed a Ford car seventy-five or eighty feet in front of him, traveling south at fifteen or twenty miles per hour. Plaintiff, riding a motorcycle, overtook the Ford car and was attempting to pass it, when his motorcycle collided with defendant's automobile. The collision occurred one hundred fifty feet south of the south end of the viaduct. If it be true that the Ford car was seventy-five feet ahead of plaintiff when

he was at the south end of the viaduct, and plaintiff overtook and was attempting to pass the Ford car when the collision occurred, and if the collision occurred one hundred fifty feet south of the south end of the viaduct, then plaintiff traveled one hundred fifty while the Ford car traveled seventy-five feet, and if the Ford was traveling fifteen or twenty miles per hour, plaintiff was traveling thirty or forty miles per hour. At the time of the collision, defendant was driving north and her car was straddling the east rail of the east street car track. If she had turned much further east, she would have gone over the embankment. She was driving about the only place she could drive on account of the streets being torn up on the east and west side. The street was so rough that plaintiff could hardly drive his motorcycle over it. The gasoline wire on plaintiff's motorcycle was caught and while trying to release it, he lost control of the machine and it threw him. At the time of the collision the motorcycle was about a foot or eighteen inches from the Ford and its rear wheel was about even with the front wheels of the Ford. A photograph was introduced in evidence which showed that a piece was gouged out of the running board on the left side of defendant's car. Defendant testified that immediately prior to the collision, plaintiff swerved to the west and as he did so, the Ford either grazed him, or the momentum of the motorcycle threw it back to the east track and it struck the running board of her car.

It is true that plaintiff's evidence shows that defendant was driving west of the center of the street and immediately prior to the collision, she suddenly turned her car to the west and against plaintiff's motorcycle, but in determining whether or not plaintiff's contributory negligence should have been submitted to the jury, we cannot consider the conflict in the testimony.

It was plaintiff's duty to exercise that degree of care for his own safety, which an ordinarily prudent person would exercise under like or similar circumstances, which in this case would be the highest degree of care. Even ordinary care would require that the driver of motor vehicle on the public highway, while attempting to pass an automobile going in the same direction, should either ascertain whether or not another automobile or other vehicle is approaching from the opposite direction, or keep his own vehicle under such control that he could protect himself in event one was approaching. Viewing the testimony from defendant's standpoint, which we must do in determining this question, plaintiff either lost control of his motorcycle and it ran against the side of defendant's car, or he was caught between the automobiles as he attempted to pass between them. We cannot say as a matter of law that a speed of thirty or forty miles per hour over a very rough street, did not cause plaintiff to lose control of his motorcycle, or did not put him in a position where he could not slacken his speed and drop behind the Ford car in time to avoid being caught

between the two cars. These questions were for the jury to determine under proper instructions.

Appellant contends that the court erred in refusing instruction "C," heretofore set out. Appellant, by this instruction sought to submit to the jury the question of plaintiff's contributory negligence. Appellant admits in her brief, filed in this court, that the question of plaintiff's contributory negligence was properly submitted to the jury in plaintiff's given instruction No. 1. It is not reversible error to refuse an instruction, although it correctly states the law, if the matters covered by it are covered by other instructions given by the court. On the record presented, the correctness of the instruction is not a live question and we will not determine it. For reasons stated, it was not reversible error to refuse this instruction.

Defendant's refused instruction "C" was, by mistake, included among the instructions given by the court and was read to the jury. The mistake was discovered and the court withdrew the instruction from the consideration of the jury. After withdrawing the instruction, the court said to the jury, *"The issue as to speed is not in this, case on either side."*

If, as heretofore held, it was a question for the jury to determine whether or not the speed of the motorcycle caused plaintiff to lose control of it, or placed him in a position where he could not slacken his speed in time to avoid the collision, then it was improper and prejudicial for the court to tell the jury that the issue as to speed was not in the case.

Appellant contends that the verdict is excessive. The evidence shows that plaintiff was confined to the house for four weeks. Two weeks of that time he was in bed except when he would get up to go to his meals. He suffered pain, was nervous and did not rest well at night. He was unable to work for eight or nine weeks. After that time he did light work, but was not able to do a man's work for almost a year.

The verdict was for $1500. It received the sanction of the trial court, and we do not feel warranted in holding that it is excessive.

For the error noted, the judgment is reversed and cause remanded. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.